### CITY OF COLUMBIA v. CHICAGO TITLE & TRUST CO.

(Circuit Court of Appeals, Fifth Circuit. November 27, 1912.)

No. 2,437.

1. COURTS (§ 366*)—FEDERAL COURTS—STATE COURT DECISION—CONCLUSIVE —STATUTES.

A decision by the Supreme Court of Alabama that a provision of a statute conferring authority on the mayor and councilmen of a city to issue bonds for municipal purposes was within the title of the act entitled "An act to incorporate the city," etc., is conclusive on the federal courts sitting in that state that Acts Ala. 1894–95, p. 605, § 29, authorizing the mayor and councilmen of that city to issue bonds for the construction of a bridge across the Chattahoochie river, was within the title of the act entitled "An act to amend an act entitled an act to incorporate the city of Columbia," etc.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

2. STATUTES (§ 120*)—TITLE—AMENDMENT OF CITY CHARTER—BOND ISSUE— "MUNICIPAL PURPOSE."

Acts Ala. 1894–95, p. 593, entitled "An act to amend an act entitled an act to incorporate the city of Columbia," etc., provides (section 29) for the construction of a bridge across the Chattahoochie river, and authorizes the issue of bonds therefor. Held that, since the river constitutes the south and east boundary of the city, as declared in its amended charter, the construction of a bridge across the river was a "municipal purpose," and hence the authority for the bond issue was valid and within the title to the act.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 168–172; Dec. Dig. § 120.*

For other definitions, see Words and Phrases, vol. 5, p. 4629.]

Appeal from the District Court of the United States for the Middle District of Alabama; Thomas G. Jones, Judge.

Action by the Chicago Title & Trust Company against the City of Columbia. Judgment for plaintiff, and defendant appeals. Affirmed.

John R. Tyson, of Montgomery, Ala., for appellant.

B. P. Crum, of Montgomery, Ala., for appellee.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, District Judge.

PARDEE, Circuit Judge. [1] In Judson v. City of Bessemer, 87 Ala. 240, 6 South. 267, 4 L. R. A. 742, it was held:

"It is insisted that the statute contains two subjects, both of which are expressed in the title—one to amend the charter of the town, and the other

to incorporate the city of Bessemer. It is well settled that a statute which contains two subjects, both of which are expressed in the title, falls within the constitutional inhibition; and when a statute contains two subjects. only one of which is expressed in the title, the portions not pertinent and germane to the subject so expressed will be declared unconstitutional. If, as appellants contend, two subjects are expressed in the title, but the enactment contains only one of them, it is not violative of the Constitution. The constitutional mandate is, not that two subjects shall not be expressed in the title, but that 'each law shall contain but one subject, which shall be clearly expressed in its title.' A statute does not come within the letter or spirit of the constitutional inhibition merely because two subjects may be expressed in the title. In such case the subject so expressed, but not contained in the law, may be rejected as surplusage. If the enactment assailed contains only one of the subjects which is expressed in the title, and only minor provisions connected with and proper or necessary to the full accomplishment of its object, the constitutional mandate is satisfied, though there may be two subjects expressed in the title. But are two subjects expressed? If the words, 'to amend the charter of the town' of Bessemer,' were omitted from the title, there would be no doubt that only one subject would be expressed. On the authority of Gandy v. State, 86 Ala. 20, 5 South. 420, these words may be rejected from the title as surplusage. When the title and the act are compared and construed jointly, and its sole purpose considered, it is obvious that but one subject is expressed—the incorporation of the town of Bessemer as a city, and to establish a charter therefor. The only provision which, it is insisted, is not cognate to the subject of incorporating the town as a city, is the authority to issue the bonds in question. Section 38 of the act confers authority on the mayor and aldermen to issue bonds of the city to an amount not exceeding $30,000, payable in 50 years from their issuance, with coupons attached, bearing interest at a rate not exceeding 8 per cent. per annum, and payable annually to bearer, at some place designated by the board. By section 41 the mayor and aldermen are authorized to negotiate and sell the bonds, the proceeds 'to be used and applied in building and constructing sewers in said city, and in erecting city buildings in said city, and in grading and making improvements of any and all kinds upon the streets of said city.' It is not infrequent that municipal authorities are necessitated to borrow money, to carry into full effect the objects of the incorporation. Negotiable bonds cannot be issued without authority, express or implied. The bonds are authorized to be issued only for municipal purposes, and authority to issue them is germane to the primary objects of the incorporation, and referable and cognate to the subject expressed in the title."

This decision of the Supreme Court of Alabama on the precise points involved in the present case controls the same, if the bonds issued under the authority granted in sections 29, 38, 39, and 40 of the act of the Legislature of Alabama approved February 18, 1895 (Acts 1894–95, pp. 605, 621, 622), were for municipal purposes; and as to that we find the city of Columbia is bounded on the south and east by the Chattahoochie river, and it would seem that an outlet in that direction over and across the said river is of public importance and continuing necessity to the inhabitants of the city. This was recognized in the former charter of the city, granted by the act of the Legislature of Alabama, approved in February 21, 1893, as is shown by the provision therein authorizing the city to buy, lease, own, and operate a ferry over the Chattahoochie river, employ a ferryman, pay him a salary, and to build and construct boats to run in the operation of said ferry, and have such other work done as would be necessary to the safe and convenient management of the same. See Acts Ala. 1893, p. 1150.

[2] Section 29 of the act of 1895 gives express authority to the may-

or and council to construct and control an iron or steel bridge or any other kind of substantial bridge across the Chattahoochie river at or near as possible where the ferry now is. Taking the boundary line between Alabama and Georgia as declared in State of Alabama v. State of Georgia, 23 How. (U. S.) 505, 16 L. Ed. 556, in connection with the south and east boundary of the city of Columbia as declared in the amended charter, the bridge in question is necessarily partly in said city of Columbia and partly outside. Under these circumstances, we conclude that the building of the bridge across the Chattahoochie river was for municipal purposes. We are not cited to any Alabama case directly in point, but see 1 Dillon, Mun. Corp. (5th Ed.) § 277(a), and cases there cited.

The decree appealed from is affirmed.